HILL et al., Appellants,

v.

WADSWORTH–RITTMAN AREA HOSPITAL et al., Appellees.

[Cite as *Hill v. Wadsworth–Rittman Area Hosp.*, 185 Ohio App.3d 788, 2009-Ohio-5421.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 09CA0012–M.

Decided Oct. 13, 2009.

J. Alex Morton, for appellants.

Stephan C. Kremer, for appellee.

---

MOORE, Presiding Judge.

{¶ 1} Appellants, Brenda and Thomas Hill, appeal from the judgment of the Medina County Court of Common Pleas. This court reverses.

I

{¶ 2} Brenda and Thomas Hill filed a negligence suit against a nurse, Amy Hoover, R.N., and Wadsworth–Rittman Area Hospital Association ("WRH"), the hospital where Hoover was employed. The trial court granted summary judgment against Brenda and Thomas Hill on all claims against WRH and Hoover.

{¶ 3} The suit was based on an incident that occurred on November 9, 2006. On that day, Brenda Hill underwent an outpatient procedure. Upon discharge, Hoover escorted Brenda out of the hospital in a wheelchair. When they approached the hospital lobby, a man stood up, clutched his chest, and collapsed to the floor, experiencing what Brenda thought to be a heart attack. Hoover stopped pushing Brenda and sought assistance for the man who had collapsed. After obtaining assistance for the man, Hoover resumed transporting Brenda out the door and toward the area where Brenda's husband was to meet her with their vehicle.

{¶ 4} Testimony diverges at this point as to whether Hoover engaged a second man in conversation outside and left Brenda alone for a period of time. Clearly, Brenda was impatient to get home, particularly after witnessing an apparent heart attack. She attempted to stand up, tripped over the footrests on the wheelchair and fell, fracturing her patella. Brenda and Thomas brought claims for negligence against Hoover and unknown hospital employees and against WRH for negligent supervision or training of Hoover. Thomas's derivative claim was for loss of consortium.

## Procedural History

{¶ 5} Initially, the suit proceeded as a simple negligence action. The defendants moved to dismiss the claims on the basis that they were medical claims and the complaint was unaccompanied by an affidavit of merit as required by Civ.R. 10(D)(2). The trial court denied the motion but later reversed course and ruled that the claims were medical claims under R.C. 2305.113(E)(3). Accordingly, the trial court ordered the Hills to file an affidavit of merit or risk dismissal. The Hills timely filed an affidavit of merit signed by Daniel Clark, R.N.

{¶ 6} Shortly thereafter, WRH and Hoover deposed Clark. During the deposition, Clark testified that Hoover met the standard of care at all times during her interaction with Brenda. WRH and Hoover filed a motion for summary judgment relying exclusively on Clark's deposition testimony. The trial court granted summary judgment as to all of the Hills' claims on the basis that they were unable to demonstrate a violation of the standard of care.

{¶ 7} The Hills timely filed a notice of appeal. They raise one assignment of error for our review.

II

## ASSIGNMENT OF ERROR

The trial court erred in granting summary judgment in favor of [ ] Wadsworth–Rittman Area Hospital Associationm [sic] (WRH) on the ground that Brenda and Thomas Hill were required to produce expert testimony on the standard of care and its breach thereof by an employee of WRH while transporting hill by wheelchair upon her discharge from WRH.

{¶ 8} In the Hills' single assignment of error, they argue that the trial court should not have required them to produce expert testimony to support their negligence claims. We agree.

{¶ 9} This court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party. *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 12, 13 OBR 8, 467 N.E.2d 1378.

{¶ 10} Pursuant to Civ.R. 56(C), summary judgment is proper if the following conditions are met:

(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 11} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the nonmoving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293, 662 N.E.2d 264. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735, 600 N.E.2d 791.

{¶ 12} The Hills have consistently argued that under Evid.R. 702(A), the skill necessary to push a person in a wheelchair is not beyond the knowledge or

experience possessed by laypersons. However, the Hills' counsel conceded at oral argument that the claims against WRH and Hoover are "medical claims" as defined by R.C. 2305.113 and as argued by counsel for WRH and Hoover. We are not bound by concessions that are incorrect conclusions of law as opposed to stipulations of fact. *State ex rel. Leis v. Bd. of Elections of Hamilton Cty.* (1971), 28 Ohio St.2d 7, 8, 57 O.O.2d 64, 274 N.E.2d 560. Therefore, we disregard the concessions by the parties and apply legal precedent to the undisputed facts presented in the motion for summary judgment.

## Medical Claim

{¶ 13} We conclude that based upon the undisputed facts of this case, the Hills' causes of action are not "medical claims" as defined by R.C. 2305.113. WRH and Hoover pointed to the plain language of R.C. 2305.113 in arguing that the Hills' claims are "medical claims." The statute provides that "medical claims" include "[c]laims that arise out of the medical diagnosis, care, or treatment of any person." R.C. 2305.113(E)(3)(b). "Care" generally has a broad meaning; however, it is not without limitation.

{¶ 14} The Supreme Court of Ohio reviewed this language in *Browning v. Burt* (1993), 66 Ohio St.3d 544, 613 N.E.2d 993. In that case, the court examined the language of R.C. 2305.11(D)(3), which was virtually identical to the current language of R.C. 2305.113(E)(3). *Browning* involved a suit against a hospital for negligent credentialing, allowing the doctor who injured the plaintiff by medical malpractice to continue his staff membership or professional privileges at the hospital. Id. at 545, 613 N.E.2d 993. The plaintiff had already secured a default judgment against Dr. Burt for medical malpractice. Id. at 554, 613 N.E.2d 993. The salient issue before the court was whether the hospital's alleged negligence in credentialing the doctor constituted a medical claim under R.C. 2305.11. Under the court's analysis, negligent-credentialing claims were not medical claims as defined by R.C. 2305.11. The *Browning* court held:

> The terms "medical diagnosis" and "treatment" are terms of art having a specific and particular meaning relating to the identification and alleviation of a physical or mental illness, disease, or defect. See, generally, Black's Law Dictionary (6 Ed.1990), at 453–454 and 1502. Conversely, the word "care" is a general word without a specific legal meaning until placed in a particular context. Under the *ejusdem generis* rule of statutory construction, "care" as used in R.C. 2305.11(D)(3) (where the word is preceded by terms such as "physician," "hospital," "nurse," and "medical diagnosis") means the prevention or alleviation of a physical or mental defect or illness. Thus, the term "care" in

R.C. 2305.11(D)(3) should not be broadly interpreted when the context in which it is used is properly understood.

(Emphasis sic.)  Id. at 557, 613 N.E.2d 993.

{¶ 15} The Supreme Court further explained types of activity that would fall under the umbrella of medical claims one year later in *Rome v. Flower Mem. Hosp.* (1994), 70 Ohio St.3d 14, 635 N.E.2d 1239, a consolidated case involving two separate plaintiffs.  In *Rome,* one of the plaintiffs was a hospital patient who, during his stay for surgical treatment, was injured while being transported from his room to the physical-therapy department in a faulty wheelchair.  Id. at 16, 635 N.E.2d 1239.  The *Rome* court held that the transport of the patient by hospital staff to physician-prescribed physical therapy was "ancillary to and an inherently necessary part of his physical therapy treatment" and therefore his claim was a medical claim because it resulted from his care or treatment.  Id.  Other appellate courts have found that claims fall under the category of medical claims when the plaintiff is injured while being transported to a diagnostic test or physical therapy.  See *Grubb v. Columbus Community Hosp.* (1997), 117 Ohio App.3d 670, 674, 691 N.E.2d 333; *Long v. Warren Gen. Hosp.* (1997), 121 Ohio App.3d 489, 492, 700 N.E.2d 364.

{¶ 16} Courts have occasionally considered dictum from *Rome* as part of their analysis.  See, e.g., *Grubb,* 117 Ohio App.3d at 674, 691 N.E.2d 333; *Cooke v. Sisters of Mercy* (May 4, 1998), 12th Dist. No. CA97–09–181, 1998 WL 221320, at *4.  In addition to determining that the injuries occurred during transport that was "ancillary to and an inherently necessary part of" the care or treatment, *Rome* included a broad statement regarding employees providing transportation to patients.  In examining the claim of the plaintiff transported in a faulty wheelchair, the *Rome* court stated that the plaintiff "was assisted by an employee of St. Vincent *who was required to use a certain amount of professional skill* in transporting the patient in the wheelchair." (Emphasis added.)  *Rome,* 70 Ohio St.3d at 17, 635 N.E.2d 1239.  This language does not provide an indication as to any particular level of professional skill required.  We believe this statement to be mere dictum rather than a statement of law.  Further, the facts of this case are distinguishable from those in *Rome.*  Although Hoover transported Brenda, Hoover's deposition testimony makes clear that a hospital volunteer was originally assigned to assist Brenda.  When a volunteer with no requisite medical training is capable of completing the transport out of the hospital, professional skill is not implicated.

{¶ 17} At the time of her injury, Brenda was either already discharged or in the final stage of discharge from the hospital.  There were no diagnostic tests or treatment activities to be completed before she left the hospital.  Accordingly, Brenda was not injured in the course of the prevention or alleviation of a physical

or mental defect or illness. *Browning,* 66 Ohio St.3d at 557, 613 N.E.2d 993. Nor was the transport ancillary to, and an inherently necessary part of, any treatment. *Rome,* 70 Ohio St.3d at 16, 635 N.E.2d 1239. Under the definition of "medical claim" in R.C. 2305.113 and as interpreted by *Browning* and *Rome,* this case does not involve a medical claim.

## Expert Testimony

{¶ 18} On June 2, 2008, the trial court ruled that the Hills' claims were medical claims under *Rome* and required them to produce an affidavit of merit signed by an expert pursuant to Civ.R. 10 or their claims would be dismissed without prejudice. The trial court's decision to require expert testimony in order to maintain the action presents a question of law. This court reviews questions of law under the de novo standard of review. *Eagle v. Fred Martin Motor Co.,* 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, at ¶ 11. When reviewing a matter de novo, this court does not give deference to the trial court's decision. Id.

{¶ 19} Generally, the purpose of expert testimony is to "assist the trier of fact in determining a fact issue or understanding the evidence." *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 687 N.E.2d 735. According to Evid.R. 702(A), an expert witness's testimony must either "relat[e] to matters beyond the knowledge or experience possessed by the lay person or dispe[l] a misconception common among lay persons." An expert witness "may not express an opinion upon matters as to which the jury is capable of forming a competent conclusion." *Burens v. Indus. Comm.* (1955), 162 Ohio St. 549, 55 O.O. 436, 124 N.E.2d 724, paragraph two of the syllabus.

{¶ 20} The Hills have consistently argued that an injury occurring while a patient is being transported in a wheelchair is not beyond the experience possessed by a layperson and requires no expert testimony. WRH and Hoover, conversely, direct this court to *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673, and *Ramage v. Cent. Ohio Emergency Servs.* (1992), 64 Ohio St.3d 97, 592 N.E.2d 828, for the proposition that expert testimony is required to prevail on a medical claim, even against a nurse. We find the Hills' argument more persuasive.

In a negligence action involving the professional skill and judgment of a nurse, expert testimony must be presented to establish the prevailing standard of care, a breach of that standard, and, that the nurse's negligence, if any, was the proximate cause of the patient's injury.

*Ramage,* at paragraph one of the syllabus.

{¶ 21} However, "[i]n a negligence action involving conduct within the common knowledge and experience of jurors, expert testimony is not required." *Berdyck*

*v. Shinde* (1993), 66 Ohio St.3d 573, 581, 613 N.E.2d 1014, citing *Ramage,* at 103, 592 N.E.2d 828.

{¶ 22} Rather than the professional skills and judgment of Hoover, this case involves escorting a patient to her vehicle by wheelchair. WRH and Hoover argue that expert testimony would be necessary to interpret or explain the hospital's transport procedures. This court is confident that under the facts of this case, the finder of fact would be able to adequately interpret WRH's "Transportation of Patients" procedures without expert testimony, as the entirety of written procedures consist of the following with respect to wheelchairs:

    A) Be sure brakes are locked.

    B) Provide blanket or cover for warmth and to prevent exposure.

    C) Always back wheelchairs in and out of elevators.

{¶ 23} The Hills cite the following cases in arguing for negligence rather than medical-malpractice principles regarding expert testimony. *Jones v. Hawkes Hosp. of Mt. Carmel* (1964), 175 Ohio St. 503, 505, 26 O.O.2d 170, 196 N.E.2d 592, involved a drowsy, lethargic, delirious, and restless woman who fell and injured herself while attempting to climb over the side rails of her bed after a nurse left her unattended. In *Burks v. Christ Hosp.* (1969), 19 Ohio St.2d 128, 130–131, 48 O.O.2d 117, 249 N.E.2d 829, a short, obese hospital patient in severe pain was sedated to the point of being foggy, drowsy, and disoriented. The defendants did not order the use of guardrails, and the patient fell out of bed, injuring herself. Id. *Dimora v. Cleveland Clinic Found.* (1996), 114 Ohio App.3d 711, 718–719, 683 N.E.2d 1175, involved a patient who fell while left standing at her walker unattended while a student nurse prepared a wheelchair and secured the door hinge. In each case, the court ruled that expert testimony was not necessary to assist the trier of fact in determining the issue of negligence.

{¶ 24} In this case, Brenda's deposition testimony indicates that Hoover was distracted while transporting Brenda outside of the hospital, that Hoover was engaged in a conversation with an unidentified man, and that Brenda was nervous because she had never seen a man have an apparent heart attack and collapse. This made her anxious to leave. Hoover left the immediate area and was gone for about one minute when Brenda fell. By the time Hoover returned, Brenda's husband had helped her back into the wheelchair. Taking all of Brenda's statements as true, the factual situation is appropriate for the application of simple negligence principles because these are not matters beyond the common knowledge of a layperson. Evid.R. 702(A). Accordingly, we conclude that under the authority above, medical malpractice involving professional skill and judgment is not implicated by these facts. See *Woodham v. Elyria Mem. Hosp.* (July 5, 2001), 9th Dist. No. 00CA007736, 2001 WL 753268, at *2, citing *Ramage,* 64 Ohio St.3d at 103, 592 N.E.2d 828. The trial court erred as a matter of law when

it ruled that the Hills' complaint set forth a medical claim and required expert testimony. "Reversing summary judgment on the basis of the trial court's improper evidentiary ruling is proper because it affects the substantial rights of the adverse party." *Gilmore v. Village Green Mgt. Co.*, 178 Ohio App.3d 294, 2008-Ohio-4566, 897 N.E.2d 1142, at ¶ 39, citing *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 164–165, 17 O.O.3d 98, 407 N.E.2d 490.

{¶ 25} Accordingly, the Hills' single assignment of error is sustained.

### III

{¶ 26} The Hills' single assignment of error is sustained. The judgment of the Medina County Court of Common Pleas is reversed, and the cause is remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

WHITMORE and DICKINSON, JJ., concur.